**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1527. HARDISON v. ENTERPRISE RENT-A-CAR.

BOGGS, Judge.

Marshall Hardison appeals from the trial court's grant of summary judgment to his former employer, Enterprise Rent-A-Car ("Enterprise") on his "Complaint for Personal Injuries." Because issues of fact remain with regard to Hardison's claims of wrongful retention, we reverse.

On appeal, "[w]e review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party." (Citation omitted.) *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004). To prevail, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." Id.

Construing the evidence in the light most favorable to Hardison, the record reveals that he was employed by Enterprise as a driver to transport rental vehicles from location to location. On April 3, 2012, Hardison, Tarsha Tarver and two other Enterprise employee-drivers were returning to an Enterprise office as part of their duties after delivering rental cars to LaGrange, Georgia. Tarver took the keys for the vehicle they were to return in (the "chase car"), and the four of them walked out of the office and out the back door to get to the vehicle. Tarver "took the keys and shoved them into the ignition and got in the backseat of the car," and closed the door. One of the other two employees got into the back seat with Tarver. Hardison was disappointed that Tarver "took the keys to the vehicle and didn't want to drive it." While standing in front of the vehicle, he told her, "if you take the keys, drive the vehicle." Tarver responded, "F--- you motherf-----," to which Hardison responded, "I don't need this today. So [he] walked away back to the front of the vehicle." He then told Tarver, "I'll drive."

As Hardison attempted to get into the driver's seat, Tarver "jumped out" and "charged" him. Hardison told Tarver, "don't rush up in my face," and the "next thing I realized my finger was in her mouth." Hardison explained that "she was biting and would not let go," and that he did not "remember saying anything. My finger is being

2

bitten, chomped down on. I'm trying to get her off my finger." He stated further that he hit her on the head to get her to let go and pushed her against a car. Following this incident, Enterprise terminated both Hardison and Tarver.

Hardison filed a complaint against Tarver and Enterprise asserting that Tarver committed assault and battery and intentional infliction of emotional distress, and that Enterprise ratified those acts.[1] He also asserted claims for wrongful retention, failure to maintain a workplace free from unwanted misconduct, physical violence and harassment, and negligent hiring[2] against Enterprise. Hardison sought exemplary damages, expenses of litigation, and attorney fees. Following some discovery, Enterprise moved for summary judgment on Hardison's remaining claims. The trial court, without a hearing, ruled: "The facts in this case are virtually indistinguishable from the facts in *Heard v. Mitchell's Formal Wear*, [ ] 249 Ga. App. 492 [(549 SE2d 149)] (2001). The motion for Summary Judgment of Enterprise Holdings, Inc. is granted."

---

[1]Hardison also asserted a claim of tortious interference with contractual relations against Tarver.

[2]This claim was later dismissed.

In Division 1 of *Heard*, this court held that "[u]nder OCGA § 34-9-11 (a), the Workers' Compensation Act (Act) is an employee's only remedy for the intentional torts of a co-worker, unless the tortious act was committed for personal reasons unrelated to the conduct of the employer's business." Id. at 493 (1). But here, Hardison has abandoned these claims in favor of exclusively pursuing his claims sounding in wrongful retention.

In Division 2 of *Heard*, this court held that the plaintiff-appellant failed "to come forward with evidence sufficient to create an issue of fact on her claim of negligent supervision or training." Id. at 494 (2). Hardison argues that *Heard* does not control here because it is factually distinguishable, and that the trial court therefore erred in granting summary judgment on his claims for wrongful retention and failure to maintain a workplace free of unwanted misconduct, physical violence and harassment. We agree.

"An employer's liability for negligent hiring or retention of an employee requires proof that the employer knew or should have known of the employee's violent and criminal propensities." (Citations and punctuation omitted.) *Kemp v. Rouse-Atlanta*, 207 Ga. App. 876, 878 (1) (429 SE2d 264) (1993). And, "[i]n order to defeat summary judgment on this issue, a plaintiff must produce some evidence of

4

incidents similar to the behavior that was the cause of the injury at issue." (Citations omitted.) *Remediation Resources v. Balding*, 281 Ga. App. 31, 34 (2) (635 SE2d 332) (2006).

The question presented here, therefore, is whether Hardison presented some evidence that Enterprise knew or should have known of Tarver's propensity to commit the violent act of which he complains. Contrary to Enterprise's argument here, it is not necessary to show that it knew of Tarver's propensity to bite a coworker. We have held that "it is not necessary that the employer should have contemplated or even be able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff." (Citations and punctuation omitted.) Id.

In contrast to the employee in *Heard*, who could present no evidence of previous incidents or a propensity for violence, id. at 494 (2), Hardison testified that prior to this incident, he had complained about Tarver's aggressive behavior to Enterprise management - a branch manager, an area manager, and an assistant mamager. He asserted that he and several other employees told a branch manager in December 2011 that while he and another employee were talking about "grandchildren purchasing toys, and the respect had been lost and various topics"

while riding in a vehicle, Tarver "came out [of] the backseat screaming and yelling. She actually lurched over her seat of the . . . van yelling and screaming" and cursing at the other employee. When the employees reached their destination and got out of the van, Tarver approached the employee she had argued with and tried to hit him. Another person stepped in and grabbed Tarver to separate the two. Hardison stated that he reported to the branch manager that Tarver was trying "to attack [the employee]." The branch manager deposed that he overheard Tarver and the employee arguing as they entered the office, but denied being told of "any type of physical movement" by Tarver toward the other employee.

The area manager deposed that he recalled being told by the branch manager of "a scuffle" between Tarver and the employee in the December 2011 incident, and that thereafter Tarver was taken off work, but gave no testimony that he was aware of any other confrontations involving Tarver, verbal or physical.

Hardison also testified that he reported to an assistant manager details of an incident in February 2012 involving Tarver in which she yelled at another employee who said "what's that smell" as he got into a van with her and other employees. The employee explained to Tarver that his comment was not directed at her, but Tarver and the employee "exchange[d] [ ] words" during the half-hour drive. When the

6

employees arrived at their destination, Tarver "continued to yell and scream" at the employee who made the comment and "aggressively [l]urch[ed] towards him." Hardison testified he told the assistant manager that after they arrived in the parking lot, "Tarver was approaching [the employee] in an angry manner."

While the area manager and branch manager maintained that they were not told of Tarver's attempts to engage in physical confrontations with other employees, Hardison presented some testimony creating an issue of fact with regard to Enterprise's knowledge of these acts. Hardison testified that he informed a branch manager and an assistant manager of Tarver's physical aggression toward one employee and her attempt to attack another employee. In the face of some evidence that Enterprise was aware of Tarver's propensity to engage in verbal confrontations and of her attempts to engage in physical confrontations, the grant of summary judgment was inappropriate and the issue of Enterprise's knowledge is for a jury's determination. See, e. g., *Tecumseh Products v. Rigdon*, 250 Ga. App. 739, 742-743 (1) (552 SE2d 910) (2001) (evidence demonstrated employer had actual and constructive knowledge of employee's propensity to lose temper and become violent); compare *Ga. Messenger Serv. v. Bradley*, 302 Ga. App. 247, 250 (2) (a) (690 SE2d

888) (2010) (no evidence that employer knew of employee's dangerous propensities).

We therefore reverse.

*Judgment reversed. Barnes, P. J., and Branch, J., concur*.